UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        Case No. 04-CR-293

GREGORY KIRKSEY,

        Defendant.

---

**RECOMMENDATION TO THE HONORABLE RUDOLPH T. RANDA ON THE DEFENDANT'S PRETRIAL MOTIONS**

---

        On December 14, 2004, the grand jury returned single-count indictment against Gregory Kirksey ("Kirksey"), charging him with possession of a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year.  Kirksey has filed two pretrial motions: (1) a motion to dismiss the indictment for undue prosecutorial delay and (2) a motion to suppress the firearm specified in the indictment.  Kirksey requested an evidentiary hearing to address both of his pretrial motions.  On February 14, 2005, this court determined that Kirksey's hearing request as to his motion to dismiss did not establish a material dispute of fact in light of the legal standard that must be satisfied to prevail on a claim of prosecutorial delay.  (Order Feb. 14, 2005 at 3.).  After the court allowed Kirksey the opportunity to supplement his request for an evidentiary hearing, and no supplement was filed, Kirksey's hearing request was denied.  At the same time, the court established a briefing schedule to allow Kirksey the chance to argue his claims without a hearing.  Kirksey has not since pursued his motion to dismiss.  As to Kirksey's

1

motion to suppress, however, this court did conduct an evidentiary hearing. Kirksey appeared in person and by Attorneys Martin E. Kohler and Brian Kinstler. The government appeared by Assistant United States Attorney William J. Lipscomb. The pleadings on Kirksey's motion to suppress are now closed, and both of Kirksey's pretrial motions are ready for resolution. A jury trial is scheduled to commence before the Honorable Rudolph T. Randa on October 17, 2005, with voir dire set for October 13, 2005.

## MOTION TO DISMISS

Kirksey's motion to dismiss argues that his right to due process was violated because the government's prosecution of this case has been unduly delayed. As explained in this court's order requiring Kirksey to supplement his request for an evidentiary hearing, a defendant may establish a due process violation if the prosecutorial delay caused actual and substantial prejudice to the defendant's right to a fair trial. United States v. McMutuary, 217 F.3d 477, 481-82 (7th Cir. 2000). A defendant's showing must rest upon more than mere speculative harm and must establish prejudice with facts that are specific, concrete, and supported by evidence. Id. at 482. If a defendant makes the proper showing, the burden shifts to the government to demonstrate that the "'purpose of the delay was not to gain a tactical advantage over the defendant or for some other impermissible reason.'" Id. The government's reasons are then balanced against the prejudice to a defendant to determine whether a due process violation occurred. United States v. Canoy, 38 F.3d 893, 902 (7th Cir. 1994).

In support of his request for an evidentiary hearing, Kirksey claimed (1) that the government had all information necessary to seek the pending indictment shortly after his arrest, on October 7, 2003; (2) that Thelma Harvester ("Harvester") died on June 26, 2004; and (3) that

Harvester would have been an essential exculpatory witness to the circumstances surrounding the traffic stop and the resulting charges.  In particular, Kirksey says that:

> Harvester would have been in a unique position to testify as to the circumstances under which Kirksey came to be in the car in which a handgun and ammunition was found.  Additionally, she would have been a crucial witness to circumstances of the traffic stop that led to the discovery of the handgun.

(KirkseyBr. at 2.).  Essentially, Kirksey claim is that Harvester's testimony would benefit him because she was present at the time of the events that lead to the pending charges.  In addition, Kirksey says that Harvester's testimony would have been exculpatory.

This showing is inadequate.  The Seventh Circuit Court of Appeals has consistently held that death of a witness sufficiently prejudices a defendant for due process purposes only when the court is "'convinced that [the witness] would have testified, that his testimony would have withstood cross-examination, and that the jury would have found [him] a credible witness.'" United States v. Doerr, 886 F.2d 944, 964 (7th Cir.1989) (quoting United States v. Valona, 834 F.2d 1334, 1339 (7th Cir.1987) and United States v. Williams, 738 F.2d 172, 176 (7th Cir.1984)).  Moreover, if Harvester's testimony would be cumulative, it would not help Kirksey and cannot be the basis for prejudice.  See e.g., United States v. Koller, 956 F.2d 1408, 1414 (7th Cir. 1992)(the unavailability of cumulative testimony results in negligible, if any, actual prejudice).

Because Kirksey did not supplement his evidentiary hearing request or file a brief that discusses the substance and significance of Harvester's now unavailable testimony, the burden of proof set forth in Doerr is not satisfied.  Moreover, the testimony presented at the evidentiary hearing on Kirksey's motion to suppress gives no indication that Harvester's testimony would necessarily have been exculpatory.  Accordingly, the court will recommend that Kirksey's motion to dismiss be denied.

3

## MOTION TO SUPPRESS

At the May 25, 2005 evidentiary hearing, Wauwatosa Police Officers Joseph Roy ("Officer Roy") and Timothy Kastner ("Officer Kastner") testified as to the circumstances surrounding the traffic stop, vehicle search, and the subsequent seizure of the firearm specified in the indictment. Kirksey presented no witnesses. Accordingly, a summary of the relevant events from the officers' perspective follows.

On October 7, 2003, at approximately 2:00a.m., Officer Roy observed a vehicle in front of him with a Wisconsin temporary license plate in the back window. (Tr. 8.). When both vehicles came to a stop sign, Officer Roy observed that the Vehicle Identification Number ("VIN") on the temporary license appeared to be smudged or altered. This led Officer Roy to believe that either the license or the vehicle had been stolen. (Tr. 9-10.). Accordingly, Officer Roy stopped the vehicle. He approached the car and asked the three occupants for identification. (Tr. 11.). The driver and the back seat passenger were identified as Jerrell L. Washington ("Washington") and Thelma Harvester ("Harvester") respectively, and they indicated that the car was owned by Harvester. The front seat passenger said that his name was Gary White. (Tr. 11-14.).

After obtaining the names of all the passengers, Officer Roy referenced the VIN printed on the dashboard of the vehicle. (Tr. 12.). The VIN he recorded matched the VIN listed on the temporary license, which Officer Roy discovered to be legible but smudged upon closer inspection. (Tr. 40.). With this information, Officer Roy then returned to his squad to verify that Harvester owned the car and to check whether there were outstanding "wants" (wanted for information) or warrants for the occupants. He radioed police dispatch, which checked the three names against the wants and warrants database, as well as a database that includes a record of all

4

state IDs. (Tr. 15, 38-39.). As to the VIN, Officer Roy testified that he did not seek assistance from dispatch and, instead, ran a search from a computer in his car. (Tr. 25.).

Officer Roy found that the car was not stolen and that Harvester was the owner, as she and Washington had claimed. (Tr. 15.). However, there was an outstanding warrant for Harvester's arrest. (Tr. 15.). There were no outstanding wants or warrants for Washington. As to the passenger identified as Gary White, Officer Roy found no listing by that name with the date of birth that the passenger claimed. This lead Officer Roy to believe that the name Gary White might be false since, based on his experience, most people of the passenger's age have conducted business that requires an ID and would be listed in the database. (Tr. 16, 39.). Consequently, Officer Roy decided to take Harvester into custody, search the vehicle incident to Harvester's arrest, and detain "Gary White" to try to conclusively identify him. (Tr. 16-17.).

By this time, Officer Kastner arrived at the scene. However, Officer Kastner did not take part in the investigation, as he was there as a backup officer only. Officer Roy returned to Harvester's vehicle, handcuffed her, and placed her in the backseat of his squad car. (Tr. 18.). Then, Officer Roy removed the passenger who said his name was Gary White and questioned him further. The passenger said that he had a Wisconsin ID, had left it at home, could not remember his social security number, and had been arrested in Indiana. (Hrg. Ex. 1 at 3.). When Officer Roy was not able to verify the passenger's identity with Indiana records, he took the passenger into custody. (Tr. 18, Hrg. Ex. 1 at 3.). As the passenger and Officer Roy were walking towards Officer Kastner's squad, the passenger said that his true name was Gary A. Kirksey. (Hrg. Ex. 1 at 3.). Officer Roy then placed the passenger in the back of Officer Kastner's squad.

Because Washington's identity was verified and there were no wants or warrants as to him, Washington stood outside Harvester's car and was not handcuffed or placed in a squad car. (Tr.

5

18.). Officer Roy searched the vehicle and discovered a loaded handgun magazine in the front seat. (Tr. 19.). Believing that the vehicle likely contained a firearm, Officer Roy then instructed Officer Kastner to secure Washington. (Id.). He continued to search the vehicle and discovered the firearm specified in the indictment in the front seat. (Id.). Based on the location of the gun, Officer Roy suspected that it belonged to either Washington or the front seat passenger, and took Washington into custody. (Hrg. Ex. 1 at 4.). Shortly thereafter, Harvester, the passenger claiming to be Gary Kirksey, and Washington were transported to the police station for further questioning. It was ultimately discovered that the passenger who claimed his name was Gary Kirksey was in fact the defendant, Gregory Kirksey. (Hrg. Ex. 1 at 5.).

## ANALYSIS

As grounds for his motion to suppress the firearm specified in the indictment, Kirksey claims that Officer Roy did not have probable cause or reasonable suspicion to stop Harvester's vehicle. In addition, Kirksey claims that Officer Roy exceeded the scope of any authority he might have had when he questioned the occupants of the vehicle about their identity.

In addressing the legality of Officer Roy's actions under the Fourth Amendment, this court asks two questions: (1) did Officer Roy have at least a reasonable suspicion that the occupants of the vehicle had committed a criminal offense when the traffic stop took place and (2) were Officer Roy's actions reasonably related in scope and duration to circumstances that justified the stop. The court answers both questions affirmatively and will recommend that Kirksey's motion to suppress be denied.

### I. Officer Roy had Reasonable Suspicion to Stop the Vehicle

As an initial matter, the court finds credible the reason that Officer Roy gave for stopping the vehicle—i.e., his observation of a smudged temporary license. Officer Roy's testimony in

6

regard to his initial observations of the temporary license was quite detailed. He explained that the temporary plate was unusual in that it was in the back window rather than in the plate bracket, where temporary plates are generally placed. Officer Roy also stated that the area where the VIN is usually written on a temporary license was the part that appeared to be smudged or altered. Furthermore, Officer Roy was able to observe the condition of the license because the defendant's vehicle was in front of him, his headlights lit up the entire back of the vehicle, and at one point the two vehicles came to a stop sign such that Officer Roy's squad car was only a few feet behind the defendant's vehicle. This detailed testimony is repeated in the report that Officer Roy prepared the day after the traffic stop, and the defendant has not presented evidence that contradicts Officer Roy's testimony in this regard.

The court's credibility determination is important because it means that Officer Roy had probable cause to believe that the owner of the vehicle violated Wisconsin Statute § 341.15. In reaching this conclusion, the court finds Kirksey's claim that it is unclear whether the VIN must be legible under § 341.15(2) unpersuasive. (Kirksey Br. at 4.). On its face, § 341.15(2) applies to a registration plate in its entirety, including the VIN number. The relevant portion of Wisconsin Statute § 341.15 reads as follows:

> § 341.15 Display of registration plates
> . . .
>
> (2) Registration plates shall be attached firmly and rigidly in a horizontal position and conspicuous place. The plates shall at all times be maintained in a legible condition and shall be so displayed that they can be readily and distinctly seen and read. Any peace officer may require the operator of any vehicle on which plates are not properly displayed to display such plates as required by this section.
> . . .

§ 341.15(2).

In the present case, probable cause to believe that there was a violation of § 341.15(2) is not a close call. Law enforcement officials have probable cause where "'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the suspect committed or was committing an offense.'" United States v. Jones, 72 F.3d 1324, 1331 (7th Cir. 1995)(citing United States v. Levy, 990 F.2d 971, 973 (7th Cir. 1993)). There was probable cause to believe that the temporary license on Harvester's vehicle violated § 341.15(2) based on Officer Roy's inability to read the license from a short distance. Indeed, it is well established that a traffic stop is ordinarily reasonable under the Fourth Amendment if the officer has probable cause to believe that there has been a motor infraction, regardless of the officer's subjective motives. United States v. Brown, 188 F.3d 860, 864 (7th Cir. 1999)(citing Whren v. United States, 517 U.S. 806, 813 (1996)); see also United States v. Tipton, 3 F.3d 1119, 1122-23 (7th Cir. 1999)(stating that the "driver's failure to display prominently a registration sticker, alone, would provide an officer with reasonable suspicion sufficient to justify, at the very least, an investigatory stop.").

An alternative basis for justifying the stop is the existence of reasonable suspicion. Reasonable suspicion is a quantum of proof less demanding than probable cause. United States v. Quinn, 83 F.3d 917, 921 (7th Cir.1996). Although an "inchoate and unparticularized suspicion or 'hunch'" will not suffice, the reasonable suspicion standard is satisfied if there is "some minimal level of objective justification for making a stop." Id. (citing Terry v. Ohio, 392 U.S. 1, 27 (1968) and United States v. Sokolow, 490 U.S. 1, 7 (1989)). Officer Roy testified that his primary reason for stopping Harvester's vehicle was that he believed that the vehicle or the temporary license might be stolen. As basis for this belief, Officer Roy explained that the smudged license might have been altered so that it matched the VIN of a stolen vehicle. Conversely, the license might be

8

stolen and then altered to match the VIN of a lawfully owned car. This testimony, in combination with the fact that the vehicle was traveling at approximately 2:00am and was in a high crime area (Tr. 36.), provides a second basis upon which Officer Roy had legal justification to conduct a traffic stop.

### II. Officer Roy's Actions Were Reasonably Related to the Circumstances that Justified the Traffic Stop

Because Officer Roy had sufficient basis to stop the defendant's vehicle, the court will turn its attention to whether Officer Roy's actions reasonably related in scope and duration to the circumstances that justified the stop. In that regard, the Supreme Court recently reiterated that "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." Illinois v. Caballes, --- U.S. ----, ----, 125 S.Ct. 834, 837 (2005). Thus, the Court continued, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Id. The Seventh Circuit has also emphasized that the detention following a traffic stop based on probable cause must be reasonable. See United States v. Carpenter, 406 F.3d 915, 916 (7th Cir.2005); United States v. Childs, 277 F.3d 947, 954 (7th Cir.2002)("[w]hat the Constitution requires is that the entire process remain reasonable.").

Kirksey argues that the reasoning set forth in United States v. McSwain be applied in the present case. 29 F.3d 558 (10th Cir. 1994). In McSwain, a Utah law enforcement official observed the defendant's vehicle with a temporary registration sticker posted in the rear window and no license plates. Id. at 559-560. The officer was unable to read the expiration date on the registration sticker because it appeared to be covered with reflective tape. Id. at 560. Based on

his observations, the officer stopped the vehicle.  Id.  However, as the officer approached the vehicle, he observed that the reflective tape was a device used by the State of Colorado to prevent alteration of the expiration date.  Id.  Even though his concerns regarding the reflective tape had been resolved, the officer approached McSwain and asked him whether he had just purchased the vehicle and was taking it for a test drive; tried to identify McSwain and a passenger in the vehicle; requested McSwain's vehicle registration; and questioned McSwain about his travel plans.  Id.  The officer then requested a background check on the two passengers and found that McSwain had a suspended driver's license and a prior record for drug and gun violations and assaults.  The officer then returned to the vehicle, obtained McSwain's consent to search it, and discovered cocaine, a gun, and drug paraphernalia.  Id.

McSwain argued that the evidence recovered from the search was the fruit of an unlawful detention.  The Tenth Circuit Court of Appeals agreed, reasoning that the sole purpose of the traffic stop—to determine whether the temporary sticker was valid—was satisfied once the officer inspected the license more carefully.  Id. at 561.  Further detention and questioning of McSwain therefore exceeded the scope of the stop's underlying justification and was not reasonable.  Id. at 561-62.

In United States v. Dumas, the Seventh Circuit Court of Appeals specifically distinguished McSwain from the situation where there is an actual violation of Wisconsin Statute § 341.15(2) or where the officer's investigation is ongoing.  94 F.3d 286, 290 (7th Cir. 1996).  In Dumas an officer stopped a vehicle believing that it displayed no license or registration.  When the officer approached the vehicle, he saw a "square cardboard with letters on it inside the rear window," but could not read it because the van had tinted windows.  Id. at 288.  The object he observed turned out to be a valid vehicle registration.  Regardless, the Seventh Circuit held that the officers

Case 2:04-cr-00293-RTR   Filed 09/20/05   Page 10 of 13   Document 43

questioning of the vehicle occupants after he observed the "square cardboard" was reasonable because the registration was not prominently displayed, as required by § 341.15(2). Id. at 290. In addition, because the officer had not confirmed the registration when he questioned the passengers of the vehicle, he was authorized to continue his investigation at that time. Id.

The record in the present case is unclear whether there was an actual violation of § 341.15(2). Officer Roy testified that the plate was illegible at a short distance and that his closer inspection of the license confirmed that it was smudged. However, Officer Roy also said that he did not write a citation for having an inappropriate plate and that the plate was not in violation. (Tr. 35.). Thus the court cannot conclude that the present case is analogous to Dumas on the basis that § 341.15(2) was violated. Notwithstanding, the relevant facts are analogous to Dumas in that Officer Roy's investigation was ongoing when he asked the occupants of the vehicle for identification. On that basis, the court concludes that Officer Roy did not act beyond what reasonable suspicion would permit by merely asking Kirksey, Harvester, and Washington for identification.

Moreover, it is clear that Officer Roy's investigatory efforts were minimally intrusive. In fact, the Seventh Circuit recently reiterated the well established rule that

> as part of the [traffic] stop, police may ask the vehicle's occupants 'a moderate number of questions' and request their identification. Such questions may efficiently determine whether a traffic violation has taken place, and if so, whether a citation or warning should be issued or an arrest made. Furthermore, the police may ask questions that do not concern the purpose of the stop and that are not supported by any other suspicion.

United States v. Muriel, 418 F.3d 720, 726 (7th Cir. 2005)(internal citations omitted). In addition, Kirksey, Washington, and Harvester remained in their vehicle during Officer Roy's initial discussion with them and there is no indication of hostility. Furthermore, the dispatch records

11

reveal that only fifteen minutes passed from the time that Officer Roy stopped the car until the time that he confirmed an outstanding warrant as to Harvester. (Hrg. Ex. 2). Thirty minutes later, Officer Roy had already spoken to the occupants of the vehicle, requested background checks for the names they provided, awaited backup, transported the passengers out of the vehicle, discovered the firearm, and taken Harvester, Kirksey, and Washington into custody. Given the short amount of time that lapsed and the number of events that occurred, the court concludes that Officer Roy at all times acted in pursuit of the investigation and did not attempt to prolong the passengers' detention any longer than necessary.

Ultimately, Officer Roy had adequate basis to stop the vehicle in which Kirksey was a passenger and did not act unreasonably at any time. Accordingly, and for all the reasons discussed herein, the court now enters the following recommendation on Kirksey's pretrial motions:

**IT IS THEREFORE RECOMMENDED** that Kirksey's motion to dismiss the indictment for prosecutorial delay be **denied.**

**IT IS FURTHER RECOMMENDED** that Kirksey's motion to suppress be **denied.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case.

Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this <u>20th</u> day of September, 2005.

<u>s/AARON E. GOODSTEIN</u>
United States Magistrate Judge